IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KOREY DEVON HARMON,       )
AIS # 275195,             )
                          )
        Plaintiff,        )
                          )
    v.                    )       CASE NO. 2:25-CV-143-WKW
                          )              [WO]
DR. RAHMING,              )
                          )
        Defendant.        )

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Plaintiff Korey Devon Harmon, an inmate proceeding *pro se*, filed a complaint under 42 U.S.C. § 1983 against Dr. Rahming.  (Doc. # 1.)  Before the court is Defendant's motion to dismiss or alternatively for summary judgment, which will be construed as a motion for summary judgment.  (Doc. # 20.)  Plaintiff filed a responsive declaration (Doc. # 22), after which Defendant filed a reply brief (Doc. # 23).[1]  Based upon a thorough review of the record, Defendant's motion for summary judgment will be granted as to Plaintiff's federal-law claims, and supplemental jurisdiction over Plaintiff's state-law claims will be declined.

---

[1] Plaintiff submitted a sur-reply to Defendant's reply brief.  (Doc. # 24.)  Because a sur-reply was not ordered, it will not be considered.  Nonetheless, the arguments in the sur-reply do not affect the outcome of the summary judgment motion.

## II.  JURISDICTION AND VENUE

Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction).  Personal jurisdiction and venue are not contested.

## III.  STANDARD OF REVIEW

To succeed on a motion for summary judgment, the moving party must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant."  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (citation omitted).  "For factual issues to be considered genuine, they must have a real basis in the record."  *Id.* (citation omitted).  The court views the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party.  *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).  "Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records."  *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (per curiam).

2

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* Alternatively, a movant without a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. . . . [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact."). If the movant meets his burden, the burden shifts to the nonmoving party to establish with evidence that a genuine dispute of material fact exists as to each of his claims for relief. *Celotex Corp.*, 477 U.S. at 324.

## IV.  BACKGROUND

### A.    Plaintiff's Complaint

In his complaint, which is signed under penalty of perjury, Plaintiff alleges that, while incarcerated at Kilby Correctional Facility in June 2023, he was unnecessarily treated for tuberculosis ("TB") without being diagnosed. (Doc. # 1 at 2.)  His "unnecessary" treatment included medication, which Plaintiff contends

caused him to develop a helicobacter pylori ("H. pylori") bacterial infection, and confinement in the medical unit. (*Id.* at 2–3.) Plaintiff contends that the administration of "unnecessary" TB medication amounts to negligent medical treatment because a patient must test positive for TB or active TB before receiving treatment. He also claims that the administration of TB medication without his consent amounts to battery. Finally, he argues that his confinement in the medical unit without a valid medical reason amounts to false imprisonment and violates his rights to due process and to be free from cruel and unusual punishments. (*Id.* at 3.)

As relief, Plaintiff demands punitive damages in the amount of $599,999,999 minus $499,999 in attorney's fees. (*Id.* at 4.)

**B.    <u>Defendant's Motion for Summary Judgment</u>**

Dr. Wilcotte Rahming ("Defendant") is a medical doctor employed as the Medical Director at Kilby Correctional Facility. (Doc. # 20 at 3.) In his motion for summary judgment, Defendant asserts that Plaintiff has failed to state an Eighth Amendment deliberate-indifference claim (*id.* at 18–20) or a Fourteenth Amendment due process claim (*id.* at 20–22). Defendant also argues that this court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims (*id.* at 22–23), or alternatively, that Plaintiff's state-law claims fail as a matter of law (*id.* at 23–29). To support his motion, Defendant submitted his declaration (Doc. # 20-1 (Ex. A)) and 87 pages of Plaintiff's medical records (Doc. # 20-2 (Ex. A-1)). The chart below

provides a timeline of Plaintiff's TB diagnosis and treatment, as detailed in Defendant's motion and accompanying exhibits.

| Date | Description |
|---|---|
| June 8, 2023 | While incarcerated at the Red Eagle Work Camp ("Red Eagle"), Plaintiff had a purified protein derivative (PPD) reading to test for TB; the result was 25 mm. Plaintiff reported a loss of appetite, night sweats, and excessive fatigue. |
| June 9, 2023 | A nurse completed a TB questionnaire and noted no noticeable weight loss; Plaintiff denied TB symptoms and said that he only had a couple episodes of night sweats with none recently. |
| June 13, 2023 | Plaintiff had a chest x-ray that showed right airspace opacities in his lungs and that right pleural effusion was present. A radiologist concluded that the x-ray showed right basilar airspace disease and modest right pleural effusion and recommended follow-up to confirm resolution of findings. |
| June 14, 2023 | PA-C Donald McArthur ordered Plaintiff's transfer to Kilby Correctional Facility ("Kilby") for evaluation. Plaintiff was transferred to Kilby and placed in restrictive housing. |
| June 15, 2023 | Defendant admitted Plaintiff into the infirmary for possible latent TB infection and to rule out active TB. Defendant ordered x-rays and a T-spot (a blood test to diagnose TB) and noted previous positive PPD test results, chest x-ray result, and that two acid-fast bacillus (AFB) cultures (*i.e.*, sputum cultures) had been collected. Plaintiff denied fever, cough, night sweats, weight loss, and hemoptysis (coughing up blood). |
| June 26, 2023 | Plaintiff submitted a sick-call request asking how much longer he had to stay in restrictive housing without having TB and wrote that he had no medical record of ever having TB or testing positive for TB. Plaintiff was informed that they were waiting on Dr. Williams at the Alabama Department of Public Health (ADPH) to read the chest x-ray. |
| June 30, 2023 | Defendant saw Plaintiff. Defendant noted that Plaintiff had a recent positive T-spot, which likely confirmed that he had an active TB infection, and that they were awaiting results from the ADPH. |
| July 7, 2023 | Defendant saw Plaintiff who reported that he was "going crazy in his cell." |
| July 11, 2023 | Dr. Taylor of the ADPH completed a TB Investigation Correctional Contact Worksheet, noting that the chest x-ray results showed plural effusion, that they were awaiting TB culture results, and that the smears taken June 14, 15, and 20 were negative. Dr. Taylor ordered a T-spot and to keep Plaintiff in isolation. |
| July 12, 2023 | A notation dated July 12 indicated a positive T-spot. Plaintiff submitted a sick-call request (dated July 28 but collected on July 12) stating that he was experiencing shortness of breath, dizziness, fatigue, night sweats, and that he was also wheezing or coughing when he sits or lies down. |
| July 14, 2023 | A notation dated July 14 stated that Plaintiff will remain in isolation until the culture results. |

| July 14 or 19, 2023 | A notation dated either July 14 or July 19 stated that Plaintiff was to start a four-drug regimen—rifampin, isoniazid, pyrazinamide, and ethambutol (RIPE)—per protocol for a positive T-spot. |
|---|---|
| July 18, 2023 | Plaintiff was formally diagnosed with active TB of the lung and referred to the chronic care clinic to start TB medications. |
| July 20, 2023 | Defendant saw Plaintiff and noted that he started RIPE therapy that day. |
| July 23, 2023 | Plaintiff submitted a sick call request stating that he did not refuse his medications, that he was "unconscious" when the nurse came around, and that he wanted his medications. |
| July 24, 2023 | Plaintiff saw RN D. Daniel for an eye acuity test; his visual acuity was 20/20, and he had no colorblindness. |
| July 26, 2023 | Plaintiff refused a scheduled provider visit for a sick-call request even though multiple attempts were made by the nursing staff and ADOC. |
| August 2, 2023 | Plaintiff was transferred from Kilby back to Red Eagle and referred to the TB chronic care clinic. |
| August 15, 2023 | Plaintiff saw PA-C McArthur regarding a cyst on his left cheek area; incision and drainage were performed.  McArthur noted that Plaintiff was on a 4-drug TB regimen and deferred antibiotics due to potential interactions.  He also noted that he spoke with the Infectious Disease RN at Kilby and was awaiting notes from the ADPH for case details.  He ordered a comprehensive metabolic panel, complete blood count, and a chest x-ray. |
| August 16, 2023 | Plaintiff had chest x-rays.  A radiologist concluded that there was slightly improved mild right effusion with similar lower lung airspace disease, possibly atelectasis and scarring, concerning for pneumonia in the clinical setting of infection. |
| August 22, 2023 | Plaintiff saw PA-C McArthur in the TB chronic care clinic for initial baseline medical data and was prescribed isoniazid 300mg, ethambutol 40mg, pyrazinamide 500mg, rifampin 300mg, and pyridoxine 20mg (a B6 vitamin supplement).  McArthur discussed TB and the need for medications.  Plaintiff denied any TB symptoms. |
| September 26, 2023 | Plaintiff saw PA-C McArthur for TB chronic care.  Plaintiff had lost 3 lbs.  McArthur noted color discrimination was checked and normal and that the July–September medication administration records indicated good compliance with medications. |
| October 11, 2023 | Plaintiff was transferred back to Kilby and admitted into the infirmary for 23-hour observation in a negative pressure room due to TB and noncompliance with isoniazid (INH).  Plaintiff stated that his bed assignment was wrong in the system, causing him to miss his medication. |
| October 12, 2023 | Defendant admitted Plaintiff into the infirmary for TB and noted that he was sent to Kilby from Red Eagle on suspicion that he was noncompliant with RIPE therapy.  Plaintiff was asymptomatic and being housed for direct observation therapy so that each medication dose would be directly observed. |
| October 23, 2023 | Plaintiff had chest x-rays; there was no plural effusion, and the radiologist concluded there was no acute cardiopulmonary process or definitive radiographic evidence of TB. |

6

| | |
|---|---|
| October 24, 2023 | Sputum was collected for the ADPH state lab. Eye exam was completed, and Plaintiff's visual acuity was 20/20 with no color vision deficit noted. |
| November 1, 2023 | Dr. Taylor at the ADPH completed a TB Investigation Correctional Contact Worksheet, reviewed the chest x-rays from June 14, August 16, and October 23, and noted the definitive improvement in the right lower lobe findings. Plaintiff was ordered to continue medications per protocol but moved to the continuation phase (stop pyrazinamide and ethambutol). Defendant saw Plaintiff who had no complaints and was compliant with medications. Defendant was awaiting ADPH reports and assessed TB of the lung and to continue present management. |
| November 6, 2023 | Plaintiff was discharged from the infirmary. |
| November 15, 2023 | Plaintiff was transferred from Kilby back to Red Eagle. |
| November 30, 2023 | Plaintiff's visual acuity was 20/20 with no colorblindness. |
| December 12, 2023 | Plaintiff saw PA-C McArthur for TB chronic care. Plaintiff had gained 8 lbs. and was prescribed INH, pyridoxine, and rifampin. McArthur reviewed labs and chest x-rays and noted that Plaintiff had good compliance in November and December with INH and rifampin and was to continue medications. |
| January 9, 2024 | Plaintiff saw PA-C McArthur for TB chronic care and continued the treatment. |
| February 12, 2024 | Plaintiff had a chest x-ray; there was no pleural effusion, and a radiologist again concluded that there was no acute cardiopulmonary process and no definitive radiographic evidence of TB. |
| February 14, 2024 | Plaintiff had an eye exam and reported trouble seeing distance and had never worn glasses; his visual acuity was 20/100 OD (right), 20/50 OS (left), and 20/40 OU (both). |
| February 15, 2024 | Dr. Taylor of the ADPH completed a TB Investigation Correctional Contact Worksheet, noted the positive T-spot on July 12, 2023, compared x-rays from June 14, 2023, and February 12, 2024, and noted clearing of the right lower lobe. Plaintiff had completed 7 months of treatment, and Dr. Taylor closed the case per ADPH protocol. |
| February 20, 2024 | Plaintiff saw PA-C McArthur for TB chronic care. McArthur noted that Plaintiff had completed multi-drug TB treatment and that ADPH had closed the case. The February 12 chest x-ray was normal, and Plaintiff was to transition to latent TB infection status after a 30-day follow up. Plaintiff had a hepatic panel and another was ordered for 30 days later. |
| March 18, 2024 | Plaintiff was transferred from Red Eagle to Elmore Correctional Facility. |
| April 3, 2024 | Plaintiff was transferred from Elmore Correctional Facility to the Frank Lee Community Work Center. |
| April 8, 2024 | Plaintiff had a TB screening questionnaire and a hepatic function panel; no symptoms were reported. |
| August 1, 2024 | Plaintiff was transferred from the Frank Lee Community Work Center to Childersburg Work Release Camp. |

7

| August 23, 2024 | Plaintiff saw CRNP Jodie Forbus for a latent TB infection follow up. Plaintiff denied any symptoms and would continue to receive monitoring in chronic care. |
|---|---|
| September 17, 2024 | Plaintiff saw RN Shelley Moseley complaining of abdominal pain for 1 month. Plaintiff had no tenderness to palpitation and denied any previous abdominal issues, nausea, vomiting, and diarrhea. RN Moseley ordered Tums for 3 days for abdominal discomfort. |
| October 1, 2024 | Plaintiff saw RN Moseley again for gastrointestinal issues and had a urinalysis and culture. |
| October 10, 2024 | Plaintiff had a TB questionnaire and was negative for symptoms. |
| October 11, 2024 | Plaintiff refused his appointment with a provider for abdominal pain. |
| October 17, 2024 | Plaintiff saw CRNP Forbus and reported ongoing abdominal pain that he believed was from the TB medication; he denied nausea, vomiting, diarrhea, chest pain, shortness of breath, fever, dysuria, and constipation; his heart rate and rhythm were regular; his lungs were clear to auscultation; and his abdomen was nontender. Forbus assessed right lower quadrant pain and ordered an abdominal x-ray, omeprazole (protein-pump inhibitor), an H. pylori lab, weekly weight checks for 6 weeks, and for Plaintiff to return in 1 month. |
| October 21, 2024 | Plaintiff had x-rays of his abdomen; no obstruction or ileus. |
| October 27, 2024 | Plaintiff tested positive for H. pylori immunoglobulin G (IgG) antibodies. (A fecal stool test was needed for a conclusive diagnosis, but it does not appear that a stool test was completed.) |
| November 24, 2024 | Plaintiff saw CRNP Forbus and reported ongoing reflux and positive H. pylori serology (IgG antibodies); he denied chest pain, shortness of breath, bleeding, nausea, vomiting, and diarrhea. Forbus assessed H. pylori and ordered treatment for 14 days with omeprazole, clarithromycin, and amoxicillin. |
| January 21, 2025 | Plaintiff saw RN Moseley in sick call for complaints of stomach pain he described as burning associated with eating; he wanted to be retested to see if there was any trace of H. pylori; and he reported that his stomach hurt and that he had a burning sensation around his naval area. Plaintiff stated that he felt better while on antibiotics but was starting to hurt again. Moseley noted bowel sounds in all four quadrants and that Plaintiff denied tenderness upon palpitation. Moseley referred Plaintiff back to CRNP Forbus for continued complaints of previous stomach issues. |
| February 6, 2025 | Plaintiff saw CRNP Forbus and reported somatic symptoms of burning to the lower left quadrant and the right lower quadrant on the inside; he denied nausea, vomiting, diarrhea, dysuria, polyuria, weight loss, fever, and heartburn. There was no rebound tenderness or overt symptoms. Forbus assessed stomach pain, possible H. pylori, and ordered to recheck for H. pylori and return as needed. |

With respect to Plaintiff's contention that Defendant's "unnecessary" administration of TB medication caused him to develop H. pylori, Defendant responds: "TB treatment does not in any way cause H. pylori, which is an endemic bacteria that infects the stomach and duodenum and has no relation whatsoever to TB treatment." (Doc. # 20-1 ¶ 4.) Defendant also states that "TB medications are completely unrelated to any H. pylori diagnosis" and "[i]t is not clear that [Plaintiff] even had active H. pylori because the presence of antibodies alone cannot confirm a diagnosis." (*Id.* ¶ 41.)

## C.    **Plaintiff's Declaration**

In response to Defendant's motion for summary judgment, Plaintiff filed a declaration. (Doc. # 22.) Plaintiff's statements in his declaration are difficult to discern and, from what can be discerned, are nonresponsive to Defendant's motion. In his declaration, Plaintiff insists that his chest x-rays looked the way they did because he was exercising his abs, jumped in the bathtub while the fans were on, and had a sinus headache and slow digestion, "but that's not tuberculosis." (*Id.* at 1.) Furthermore, in addition to the alleged violations of state law in his complaint, Plaintiff alleges other state-law violations in his declaration. First, Plaintiff alleges that Defendant violated Alabama Code § 22-11A-9 by failing to inform the x-ray examiner "of [Plaintiff's] dig[e]stive system, and [his] exercising, . . . so the examiner could determine if [he] had tuberculosis[] or not." (*Id.*) Second, Plaintiff

claims that Defendant violated Alabama Code § 13A-6-21 by "assaulting [Plaintiff] with the use of [a] dangerous instrument or weapon, to wit[,] tuberculosis medication." (*Id.* at 3.)  Third, Plaintiff asserts that Defendant falsely imprisoned him when Defendant told him that the longer he refused to take his medication, the longer he would be in restrictive housing.  (*See id.* (citing Ala. Code § 6-5-170 (defining "false imprisonment")).)

In conclusion, Plaintiff says that he was "place[d] in a[] dirty, nasty, medical housing unit" and told that he could not go back to general population until he took "some medication" that would "mess [his] antibod[ies] up." (*Id.*)  He further claims that, ever since Defendant's "mis[chief]," his "immune system" has been "in pain" and if Defendant had not treated him for TB, his stomach, health, and mental state would "be ok[a]y and work properly." (*Id.* at 4.)

### D.    **Defendant's Reply**

In his reply, Defendant asserts that Plaintiff's declaration is essentially Plaintiff espousing his lay opinion that he did not have TB, despite ample medical evidence to the contrary (*i.e.*, a positive PPD test, chest x-ray, and positive T-spot). (Doc. # 23 at 1.)  Defendant contends that Plaintiff's evidence does not survive the summary judgment standard for an Eighth Amendment deliberate-indifference claim.  The sworn allegations in Plaintiff's complaint and declaration "show that, instead of being subjectively aware of a substantial risk of harm and ignoring it,

10

[Defendant] sought to *avoid* harm by treating Plaintiff's TB even if Plaintiff claims he did not have it."  Additionally, Defendant argues that, "[t]o the extent Plaintiff alleges that [Defendant] improperly treated him because he was not infected, such a claim amounts at most to negligence or medical malpractice, which does not violate the Constitution." (*Id.* at 2.)  Defendant recognizes Plaintiff's obvious disagreement with Defendant's treatment of Plaintiff's TB but emphasizes that such disagreement does not amount to an Eighth Amendment violation. (*Id.* at 2–3.)

Moreover, Defendant asserts that Plaintiff's attempt to raise a Fourteenth Amendment due process claim fails because "the prison's interest in preventing the spread of tuberculosis, a highly contagious and deadly disease is compelling." (*Id.* at 3 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061–62 (5th Cir. 1997)).) Defendant also points out that, as indicated in Plaintiff's medical records, it was Dr. Taylor at the ADPH, not Defendant, who ordered Plaintiff to be placed in restrictive housing and treated for TB. (*Id.*)

## V.  DISCUSSION

Because Plaintiff filed this action using a standard civil rights complaint form, it is presumed that he brings this suit under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

§ 1983.  A § 1983 claim requires proof of two elements:  (1) that the plaintiff was deprived of "rights, privileges or immunities" protected by the United States Constitution or federal laws; and (2) that the deprivation was caused "by a person acting under color of law."  *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987) (citation omitted); *Beaubrun v. Dodge State Prison*, 2025 WL 2490396, at *3 (11th Cir. Aug. 29, 2025) (per curiam).

Plaintiff's complaint, liberally construed, alleges violations of his Eighth and Fourteenth Amendment rights.  He also asserts multiple claims under Alabama law.

A.    **Eighth Amendment Claim**

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  In *Estelle v. Gamble*, the United States Supreme Court said that deliberate indifference to a prisoner's serious medical needs constitutes an "unnecessary and wanton infliction of pain" in violation of the Eighth Amendment.  429 U.S. 97, 104 (1976).  But the *Estelle* Court recognized that its conclusion "does not mean . . . that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment," *id.* at 105, and that, "in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind,'"

12

*id.* at 105–06.  For example, "[a] complaint that a prison physician has been merely negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."  *Bailey v. Lopez-Rivera*, 2026 WL 161319, at *2 (11th Cir. Jan. 21, 2026) (per curiam) (citing *Estelle*, 429 U.S. at 106).

"To establish liability on a deliberate indifference claim, a plaintiff must demonstrate that:  (1) [he] suffered a deprivation that was objectively[,] 'sufficiently serious,' and (2) the defendant acted with 'subjective recklessness as used in the criminal law.'"  *Wingo v. WellStar Health Sys., Inc.*, 160 F.4th 1184, 1190 (11th Cir. 2025) (quoting *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc)). "To meet the second step, the plaintiff must show that the 'defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff.'"  *Id.* at 1190–91 (quoting *Wade*, 106 F.4th at 1262).

Plaintiff's deliberate-indifference claim fails at both elements.  Plaintiff has not demonstrated that he suffered an objectively, sufficiently serious deprivation, but even if he had, he has not shown that Defendant was actually, subjectively aware that treating Plaintiff for TB caused a substantial risk of harm to Plaintiff.  On the contrary, it appears that Defendant treated Plaintiff for TB based on various indications that Plaintiff was infected to *prevent* harm to Plaintiff and other inmates, despite Plaintiff's objections.   To the extent that Plaintiff claims he was improperly

13

diagnosed with and treated for TB, and that the "improper" diagnosis and "unnecessary" treatment led to his development of H. pylori,[2] these allegations amount to, at most, negligence or medical malpractice claims (*i.e.*, state-law tort claims), which do not violate the Eighth Amendment. *See Bailey*, 2026 WL 161319, at *2.

Plaintiff's asserted disagreement with Defendant's treatment decisions, including the administration of TB medication and confinement in restrictive housing, reflects his belief that "different treatment should have been provided." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). However, the method or mode of treatment is "tantamount to a medical judgment call," *id.*, and disagreements over treatment decisions do not constitute Eighth Amendment deliberate indifference. *See, e.g.*, *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Although [the plaintiff] may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference.").

This case is odd. Normally, a deliberate-indifference claim stems from a prison medical staff's failure to provide timely or adequate treatment or to provide any treatment whatsoever. In the TB context, the typical claim in the Eleventh

---

[2] In his declaration, Defendant provided his opinion as a medical professional that "TB treatment does not in any way cause H. pylori" (Doc. # 20-1 ¶ 4); "TB medications are completely unrelated to any H. pylori diagnosis" (*id.* ¶ 41); and whether Plaintiff even had H. pylori is unclear "because the presence of antibodies alone cannot confirm a diagnosis" (*id.*). Plaintiff has not offered any evidence to refute Defendant's contentions regarding Plaintiff's allegations that his TB treatment caused him to develop H. pylori and, thus, has not raised a genuine dispute of material fact.

14

Circuit seems to stem from prison officials' alleged deliberate indifference to inmates' risk of TB exposure. *See, e.g.*, *Combs v. Nelson*, 419 F. App'x 884, 885 (11th Cir. 2011) (per curiam) (affirming lower court's grant of summary judgment in favor of the defendants on inmate-plaintiff's claim "that several prison officials were deliberately indifferent to his health and safety by exposing him to active tuberculosis ("TB"), resulting in his testing positive for latent TB"); *Truss v. Warden*, 684 F. App'x 794, 795 (11th Cir. 2017) (per curiam) (affirming lower court's grant of summary judgment in favor of the defendants on inmate-plaintiff's claim that "the prison defendants were deliberately indifferent to the risks concerning his exposure to tuberculosis ("TB") in an overcrowded prison and through the use of unsanitary hair clippers by prison barbers"). Here, to the contrary, Plaintiff complains that he *received* treatment for TB even though he insists he did not have TB and never saw any medical records indicating that he had tested positive for TB. However, Plaintiff's "[s]elf-serving statements . . . do not create a question of fact in the face of contradictory, contemporaneously created medical records." *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (per curiam).

In sum, Plaintiff's Eighth Amendment deliberate-indifference claim fails because Defendant has established that "there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In response to Defendant's evidentiary submission, Plaintiff has not shown

an objectively, sufficiently serious deprivation or that Defendant was actually, subjectively aware that treating Plaintiff for TB, per protocol, caused a substantial risk of harm to Plaintiff.  Plaintiff's insistence that he was not infected with TB and thus was improperly diagnosed with and treated for it is insufficient to create a genuine dispute of material fact, as Defendant has provided contemporaneously created medical records that contradict Plaintiff's statements.   Consequently, summary judgment will be granted in favor of Defendant on Plaintiff's deliberate-indifference claim.

## B.      Fourteenth Amendment Claim

Under the Due Process Clause of the Fourteenth Amendment, no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.   Courts recognize two types of due process claims: substantive and procedural.  *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Substantive due process "specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).   Procedural due process requires that a party be given notice and afforded an opportunity to be heard before his rights are affected.  *See Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of

due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (quoting *Armstrong v. Manzo*, 380 U.S. 545, 553 (1965))).

In *Washington v. Harper*, the United States Supreme Court concluded that forcibly medicating a mentally ill prisoner with psychotropic drugs does not violate due process. 494 U.S. 210, 236 (1990) (balancing "an inmate's liberty interest in avoiding the forced administration of antipsychotic drugs and the State's interests in providing appropriate medical treatment to reduce the danger that an inmate suffering from a serious mental disorder represents to himself or others"). However, the *Harper* Court's holding was with the caveat that there are adequate procedural safeguards in place to ensure that the prisoner's interests are taken into account. *Id.* at 234. *But see McCormick v. Stalder*, 105 F.3d 1059, 1062 (5th Cir. 1997) ("When public safety is an issue, liberty or property interests can be deprived even without a prior hearing."); *cf. Motley v. Taylor*, 451 F. Supp. 3d 1251, 1292 (M.D. Ala. 2020) ("The Supreme Court allowed the State of Illinois to forgo a pre-deprivation hearing in *Dixon* because the drivers at issue posed a clear danger to public safety, which merited their immediate removal from public roads." (citing *Dixon v. Love*, 431 U.S. 105, 114–15 (1977))).

Since *Harper*, other circuits have balanced a prisoner's interest in refusing medical treatment with the prison's interest in protecting other inmates' health and safety in the context of tuberculosis diagnoses. *See, e.g., Cummings v. Ellsworth*

17

*Corr. Facility*, 511 F. App'x 808, 812 (10th Cir. 2013) (holding that the prisoner-plaintiff failed to state a Fourteenth Amendment claim because the mandatory TB treatment was reasonably related to the prison's legitimate interest in preventing the spread of a contagious disease); *McCormick*, 105 F.3d at 1061, 1062 (holding that forcing the inmate-plaintiff to undergo TB treatment did not violate due process because, even if the inmate had a substantive due process right not to receive TB treatment without his consent, "the prison's interest in preventing the spread of tuberculosis, a highly contagious and deadly disease, is compelling").

While the Eleventh Circuit has not directly addressed forced TB treatment in a published opinion, district courts within the circuit have followed the reasoning of other circuits. *See, e.g.*, *Barrett v. Warden*, 2010 WL 3222110, at *2 (S.D. Fla. July 15, 2010) (citing *McCormick* for the proposition that "due process does not prevent prison officials from forcing a prisoner to undergo treatment for tuberculosis"); *cf. Dunn v. Zenk*, 2007 WL 2904170, at *2–3 (N.D. Ga. Oct. 1, 2007) (citing, among other cases, *McCormick* and *Washington v. Cambria*, 1998 WL 840946 (9th Cir. 1998) and ultimately holding that involuntary administration of a TB test does not offend the Constitution because states have a legitimate penological interest in controlling the spread of TB).

Here, even if it is assumed that Plaintiff has a substantive due process right to refuse TB treatment, the compelling interest of Defendant, along with other prison

18

officials and medical staff, in preventing the spread of TB within prisons outweighs this right. Therefore, Plaintiff's substantive due process claim cannot survive summary judgment. To the extent Plaintiff alleges a violation of his procedural due process rights (specifically, the opportunity to be heard on his objections to TB treatment beforehand), it was reasonable as a matter of law to "deprive" Plaintiff of his right to refuse medical treatment even without a prior hearing because Plaintiff's safety and the safety of other inmates was at stake. *See McCormick*, 105 F.3d at 1062.

In sum, Plaintiff's Fourteenth Amendment due-process claim fails because Defendant has established that "there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In response to Defendant's summary judgment submission, Plaintiff has not shown a violation of his substantive or procedural due process rights. Relevant case law supports the conclusion on this summary judgment record that Plaintiff's forced treatment for TB does not violate the Constitution because prisons have a compelling interest in preventing the spread of TB. Consequently, summary judgment will be granted in favor of Defendant on Plaintiff's Fourteenth Amendment due process claim.

## C.     Supplemental Jurisdiction

Plaintiff also brings state-law tort claims of (1) negligent medical treatment (Ala. Code §§ 6-5-548[3] and 22-11A-9[4]); (2) battery (Ala. Code § 13A-6-20); and (3) false imprisonment, "Article I, Section 6 right to due process, Section 13 right to freedom from cruel[] and unusual punishment."[5]  (Doc. # 1 at 2–3.)

"A district court has original jurisdiction over claims 'arising under the Constitution, laws, or treaties of the United States.'"  *Bravo v. Loor-Tuarez*, 727 F. App'x 572, 576 (11th Cir. 2018) (quoting 28 U.S.C. § 1331).  "When a district court has original jurisdiction over some claims, it 'shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original

---

[3] Alabama Code § 6-5-548 is a portion of the Alabama Medical Liability Act (AMLA), Ala. Code § 6-5-540 *et seq.*  This particular section of the AMLA places the burden of proof on the plaintiff and defines "reasonable care" in the context of a similarly situated health care provider.  *See* Ala. Code § 6-5-548.

[4] Alabama Code § 22-11A-9 mandates the reporting of tuberculosis cases.  Plaintiff claims that this code section requires a patient to test positive for tuberculosis or active TB in order to be treated for it. (Doc. # 1 at 3.)  This is incorrect.  Section 22-11A-9 requires "the person in charge of any laboratory performing a positive test for active or suspected active tuberculosis" to report it to the appropriate state or county health officer.  *See* Ala. Code § 22-11A-9.

[5] Article I, Section 6 of the Alabama Constitution protects the due process rights of defendants subject to criminal prosecution.  *See* Ala. Const. Art. I, § 6.  Article I, Section 13 of the Alabama Constitution states, "That all [state] courts shall be open; and that every person, for any injury done him . . . shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay."  Ala. Const. Art. I, § 13.  Presumably, Plaintiff meant to cite to Article I, Section 15 of the Alabama Constitution, which prohibits the infliction of cruel and unusual punishment.  *See* Ala. Const. Art. I, § 15.

20

jurisdiction that they form part of the same case or controversy.'" *Id.* at 576–77 (quoting 28 U.S.C. § 1367(a)).

"A district court 'may decline to exercise supplemental jurisdiction' over state law claims when, among other things, it has 'dismissed all claims over which it has original jurisdiction.'" *Id.* at 577 (quoting § 1367(c)(3)). "A district court therefore has discretion to continue to exercise jurisdiction over state law claims in a case even after dismissing the federal claim that created the original jurisdiction." *Id.* (quoting *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 142–43 (11th Cir. 2007) (per curiam)). But the Eleventh Circuit has stated that "[s]tate courts, not federal courts, should be the final arbiters of state law." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997). The Eleventh Circuit also has "encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) (per curiam).

Because state courts ordinarily should have the final say on state law and because the Eleventh Circuit has encouraged dismissal of state-law claims in cases where federal-law claims have been dismissed prior to trial, this court will decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3). Defendant's motion for summary judgment will be granted on Plaintiff's federal-law claims prior to trial. Therefore, "judicial economy, fairness,

21

convenience, and comity" dictate having Plaintiff's remaining state-law claims decided by state courts.  *See Baggett*, 117 F.3d at 1353.

## VI.  CONCLUSION

Based on the foregoing, it is ORDERED as follows:

(1)    Defendant's motion for summary judgment (Doc. # 20) is GRANTED on Plaintiff's Eighth Amendment deliberate-indifference claim and Fourteenth Amendment due process claim; and

(2)    The court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367, and the state-law claims are DISMISSED without prejudice.

Final Judgment will be entered separately.

DONE this 31st day of March, 2026.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE